Good morning, Your Honors. My name is Catherine Thixton, and I represent Akil Daniels. Mr. Daniels committed a bank robbery on January 25, 2011, and he pled guilty to that robbery. He also was indicted on a handful of other bank robberies and an attempted bank robbery. He was convicted of three bank robberies, the attempted bank robbery, but there was insufficient evidence to show that Mr. Daniels, in fact, was the perpetrator of those bank robberies. And there is insufficient evidence to show that Mr. Daniels, although the person who was in the bank – Let me ask you about the one where he says, this is crazy, and he left without ever giving – Yes, I identify – That's your best one, and – Right. would be that he was going to rob the bank and then thought better of it and decided not to. But the question, I think, is whether he made any substantial step toward robbing the bank. I agree, Your Honor. And what I want to know is, why isn't entering the bank to make a withdrawal, as he said, when he doesn't have an account there, doesn't have any money there, why isn't that a substantial step? Because there are any number of reasons, as you've just pointed out, that he could have turned around and left. He could have thought better of it at any point. Well, the standard under Bevington is that he made such progress that it will be consummated unless interrupted, independent of the will of the attempter. Now, it looked like he was the manager, whoever, was alert enough to kind of – just actually kind of courageous, went up to him and, you know, said, what do you want to do, what are you doing here? But then it has – but the next clause of the Bevington standard is it has to be independent of the will of the attempter. And it seems to me that, yeah, he was interrupted, but maybe he then just changed his mind and just said, no, you know, was the interruption so great that he had, you know, eliminated his will and his state of mind? I agree. I think some of the other phrases in Buffington also support my argument because it has to be of such substantiality that, unless frustrated, the crime would have occurred. And I don't think that being spoken to by a person at the bank while he was standing there talking on his phone and then leaving texting, I don't think that that – Why isn't he all done with the attempted bank robbery when he walks in before he even meets the manager? Well, he – because there are any number of things, again, that can happen between after he walks in those doors. He can get a call on his phone to leave. We don't know if, in fact, that's what happened, that he got a call on his phone and he decided not to go into the bank after all. Also, we have to show that he – that there was intent, not we. The government has to show that he intended to rob the bank when he walked in. I think this would be a completely different case if, for some reason, he dropped a demand note on the floor as he walked out. I mean, that – Well, he could have given the demand note to the person who came up to him instead of a debit card or something. He could have just given the guy the note, right? He could have. Money? I mean, he could have. But there's nothing to – there's no evidence that he had a demand note at this point. We don't know that – In other words, consummated unless interrupted by circumstances independent of his will, to mean the kind of interruption that stops him, like somebody pulling a gun on him, a guard grabbing his arms and another one handcuffing him, as opposed to interrupted by circumstances dependent on his will, such as changing his mind and deciding this is a stupid thing to do or a crazy thing to do, as he said. I'm not sure I understood what your question was. Mr. Graves and Taylor would have been consummated unless interrupted by circumstances independent of his will. To me, the most obvious reading of that is what caused the robbery not to occur, his own will or somebody stopping him. And I can't see why there isn't at least a jury question that it was purely his own decision not to complete the crime as opposed to somebody stopping him. The jury could also interpret it to mean the manager stopped him. It could be either way. And if it could be either way, that means there's sufficient evidence. Was the jury instructed properly on that? I believe so. I did not argue that the jury was improperly instructed. I haven't articulated this clearly. It looks like I'm not making myself clear. What I want to know is why couldn't a jury think he meant to rob the bank, he took steps to rob the bank, what he wears to all his bank robberies, and then he changed his mind. But that doesn't mean that somebody prevented him from doing it. He already had taken a substantial step to doing it. He just changed his mind before he completed it. I don't think he had taken a substantial step. I don't think going into the bank was a substantial step. Why not? And I certainly Why isn't going into the bank a substantial step? Because there are too many steps that take place after that. He stood in line. He waited his turn. He was talking to someone on the phone. And in that period of time, and it may have been a brief period of time, he certainly could have changed his mind, which at some point he did change his mind, whether he changed his mind based upon his phone conversation, what he was thinking in his head, or even perhaps if the bank manager walked up to him and he thought, you know, I'm, you know, I'm not going to, you know, that just gave him enough time to pause and think about what he did and then turn around and walk back out. But I Well, I don't see why that helps here. I mean, we've got the statement of the elements and still a conviction for attempt requires proof of both culpable intent and conduct a substantial step. So guy thinks to himself, I need some money. I can't get a job because I'm a convicted criminal. I'll rob banks. Willie Sutton was asked why he robs banks. And he said, that's where the money is. So I will rob banks. Now we've got motive. And then he says, I'm going to rob this bank. I'll put on my lucky robbery uniform and go into the bank and give him a note like I always do and get a little money. And that he puts on his uniform and he goes into the bank. And at that point, it looks to me like under still the attempted robbery is completed and it really doesn't matter that he changed his mind. That's what I'm trying to find out because I'm really sympathetic to his claim that he wasn't robbing that bank. I mean, it looks like he just But if he changed his mind, there was no attempt. If he changed his mind, there was no attempt at that bank robbery. But not only Where does it say that? Because of, if he changed his mind because the culpable intent element is missing? Is that what you're saying? No, that's a separate element. So it's a substantial step. There's culpable So you're saying it's all about changing his mind. What if he had gone all the way through and handed the demand note to the teller and then said, oh, never mind. What you just said, he changed his mind, so still no attempt? If he had changed his mind without any kind of intervention, like if he had gotten up to the front of the line and said, you know, and turned around and walked back out, I would say that there's still no attempt. Okay, but that means it's not about whether he changed his mind. It depends on what he's done up to that point is what I'm getting from what you're saying. In other words, it's not exclusively dependent on changing his mind, because if you're the bank teller and I come up to you and I hand you a note saying, give me all your 20s and put them in a bag, and then I don't like the way things look and I turn around and leave, I've changed my mind. Have I committed an attempted bank robbery? Yes or no? I'm sorry. In your facts, you've given me the note? Yeah. He's attempted a bank robbery, I would say. It's not just about changing your mind. It's what's happened up to that point. As I said, changing your mind is enough. And the way I had read the law, changing your mind before you've taken a substantial step means you haven't committed an attempt. Changing your mind after you've taken a substantial step means you've committed an attempt. That's the way I read it. And I'm trying to find out if there's authority to read it otherwise, that if you change your mind during the course of the crime, then you're no longer guilty of an attempt. Let me give you a hypothetical to make it clear. Okay. I once demanded a robber. He robbed a barbecue restaurant, gun, shooting, whole deal, and then he reached into the till and he was so embarrassed by how little money was there, he just left it and ran away. And it never occurred to me, frankly, that he hadn't attempted to rob the barbecue restaurant, but it sounds like it should have occurred to me because I think what you're saying is it's not an attempt if you change your mind during the course of the crime. I think there are two elements to attempt. Of course, you have to show the specific intent to commit the crime and you have to show a substantial step. So I think in this case we're missing two things. We're missing proof beyond a reasonable doubt that there was intent and we're missing proof beyond a reasonable doubt that he committed a substantial step. Now, unlike the government, of course, I don't think it's saying that he could be the government actually uses the word essential in some essential steps in some places of their argument, but I don't think. Okay. So, yes, we know there's two elements for attempt. Are there any cases that continue throughout the taking of the steps toward the commission of the crime? I mean, here he clearly changed his mind, right? We all know he changed his mind. And so are there any cases that say, well, if you walk in a bank and then you change your mind? And clearly he wasn't, you know, he wasn't stopped by someone arresting him or the security guard or anything like that. He just walked back out. Is there any case that's like that that says that now, well, he had the intent, but he no longer has the intent. So now we don't look at substantial steps? Not that I was able to find. I do think it's important to note that I don't think that there was proof that he intended to rob the bank. Certainly that he intended to rob the bank on this day. So the comment about the withdrawal, you don't really read anything into that? Pardon? The comment about I'm here to make a withdrawal, you don't really read anything into that? I don't. I know you can read it two ways, but that's what jury questions are about. I could see this as some, you know, a young black man who's talking on the phone, who's waiting in line at the bank, and then he gets approached by the bank manager. I mean, I could see him copying an attitude. I mean, I can... I understand that you can read it two ways, but I think as Judge Kleinfeld said before, that's what jury questions are about. Right. I know this is the interesting legal issue in the case. As a practical matter, did the judge contribute at all to the sentence here? Yes. Really? Because he got a below-guideline sentence, right? Well, he did. I mean, it had this minuscule effect on the offense level, right? Just added, maybe added, because of the multiple counts thing, it bumped it up one or something like that? I think it did substantially contribute, I mean, proportionally contribute to the sentence. I'm running out of time. I did want to cover the issues regarding the three counts for which he was convicted of actually being the person who robbed the bank. I think there are some serious identification issues in this that present themselves in this case. Mr. Akeem, Akeel Daniels, was not identified on any of those bank robberies by sight, with the exception of by the greeter in count one. And I think it's important to note that the teller in that case, in fact, said it was not Akeel Daniels who committed the bank robbery. It was his brother. She identified positively his brother, Asim Daniels, who then went on to commit another bank robbery in March. She also identified him in the March bank robbery and said that, in fact, it was a ---- But you're talking about the one where the greeter says that's the guy and the teller says, no, it isn't? Right. Why isn't it sufficient evidence if the greeter says that's the guy? Because the teller was the person who had the ---- It's good impeachment. Yes. It's good ---- That's an argument you make to a jury, not an argument you make about sufficiency of the evidence on appeal. Right. But that's ---- and that's count one. There are two other counts in which he is ---- he, in fact, is not identified. And I think what happened here is ---- One of those counts, he had the dye pack. Pardon? The ---- No, he pled guilty to that one. That's the one he pled guilty to. Yeah, he pled to that one. Yeah. Why don't you stand? You reached your time. And I want to ask some of those questions that you raised, you raised them in the brief, of the government in addition to the issue of corroboration of the confession as to some of those counts. All right. Thank you. Good morning, Your Honors. If it pleases the Court, Michael Lassiter for the United States. The ---- I guess I could go directly to the main issue that was raised first, and that's the attempt charge. There was an inquiry about the instructions and ---- I do have a copy of the instruction. It appears to be the standard one. It goes through the elements. And the third one being the defendant did something that was a substantial step toward committing the crime. Mere preparation is not a substantial step toward committing the crime. To constitute a substantial step, a defendant's act or actions must demonstrate that the crime will take place unless interrupted by independent circumstances. My recollection is that's the model instruction. Did you, you were the trial lawyer? I, there were two of us trying the case. I was the lead attorney. You were the trial lawyer too? Yes. Okay. So how was it argued? How was the attempt argued? Was it argued as he changed his mind or? Well, honestly, I can't remember how defense argued it. My argument to the jury was this individual was positively identified. The teller, or excuse me, the manager, Mr. Weidel, recognized him as he first came in from a picture of a robbery a few days before at a different branch of this credit union and stood up to meet him. He was in line. His testimony was that he asked him to take off his sunglasses and his cap, pursuant to the credit union policy, because they don't like disguises. Did the deafness on account of being shot in the head come up at trial or is that just something we know from the pre-sentence report? That first appeared in the sentencing. Looks like there was a fair chance he never heard the manager between the cell phone and being shot in the head, but if it didn't come up at trial, then. No, it didn't, and he did communicate with the manager. The manager asked him, can I help you? And he was in line, and the defendant said, yeah, I'm here to make a withdrawal. And the manager's response was, okay, I need to see either your debit card or your account number. Meanwhile, the testimony is, while this conversation was going on, the defendant was moving towards the counter, towards the teller station. He then decided, obviously changed his mind, and said, this is crazy, and walked out. Now, he did have a phone next to his ear. There's no testimony that there was any conversation going on, but there was a phone up there. It was argued to the jury that, oh, and the manager also testified that, pursuant to a subpoena we had provided him with, he had checked the bank records, and the defendant had absolutely no account at any time at any of the branches of this credit union. My argument to the jury was, when he said he was making a withdrawal, he was being honest and truthful. The problem is, when you don't have an account, the paperwork that you submit, I think I refer to it as a withdrawal slip, which I don't think anybody uses anymore, but some of us remember that they were around. Instead of having a withdrawal slip, he was going to give a demand note. But he was confronted before he got to that station. That's what a withdrawal slip is, actually. Yeah, we took a poll of the people who were in here. Bank owes you money. Yeah. They've given you a demand note, basically. Yeah, something along those lines. Withdrawal slip is a demand note. Yeah. So our argument was, as to the issue of intent, he was very specific. He said he wanted to make a withdrawal. Now, the cases about sufficiency of the evidence, Still and Buffington, are more of what we describe as casing. They were around, checking it out and everything else, and I think it was Still that specifically said, our facts do not establish either actual movement toward the bank or actions that were analytically similar to such a movement. So in Still, it could have been enough if he had actually walked towards the bank. Here, not only did he walk towards the credit unit, he was in there. And again, what his intent was, why he decided to change his mind, that's a jury question. So the jury was instructed properly and found him guilty. All right. Can I just address, I want to address two things on each of the other counts, the counts of conviction. Okay. So 1220, which is count one. So with the premise that he confessed, but in order for you to get a conviction, you have to also have some corroboration, right? Yes. So with count one, he was identified by Bruno, who was the greeter in court, right? Absolutely. Okay. Count two, which is the 1222, there wasn't an identification by any person. There was testimony by the teller that the wad of money in the photo from the cell phone that the defendant had when he was arrested looked about the same as the wad of money that he had given to him. Yes. Now, there had been a photo lineup identification by one of the other employees, Pamela Mitchell. Was that introduced into the court? Yes. And she said something like he resembled the person that was in the other robbery or something like that? That was another. Different one. Yes. That was one of the other ones. Yes. That's what I'm trying to go through. Yes. R.T. Reporters Transfer Volume 2 at 153. Okay. So there was a ---- What did she say? She was given a photo spread and identified the defendant's picture as the perpetrator. What kind of words? Might be the guy? Could be the guy? Resembles the guy? Or that's the guy? My recollection, Your Honor, is it was just she identified that person. It wasn't one of the other ones said this one more closely resembles. Identified is one of those broad words like when cops say vehicle and you don't know if it's a sedan or a pickup truck. In your brief at page 5, you say Pamela Mitchell, a branch assistant manager, noticed Daniel Zenner at the credit union and noted that he looked like the person in the surveillance photograph she had seen from the robbery of the Sweetwater Road branch two days earlier. There's that. That's accurate. Is there something more? Because it's not in your brief. No, it's at RG2. If I can just have a second. Are we still on count two? We're still on count two. Okay. So all she said was he looks like the photo of a guy who did a different robbery? Well, that testimony was when he entered the bank, she noticed that he resembled. Their branch had been robbed earlier also. And they get their pictures. There's a little be on the lookout type thing for these people. And she's testifying, I believe, what your Honor just mentioned was that when he came in, he looked like the person that had been in the picture. But. As I said, page 153 of volume two. Direct examination of Pamela Mitchell includes that she was shown a series of photographs with a blue sticker on it with the letter A. And she went through those, yes. And what did you recognize those pictures to be? They were the pictures shown by the investigator at the time. Did you identify any of the pictures as being the picture of the person who was involved in the robbery? I did. Which one was that? I believe it was number two. Number two was the defendant. That was the defendant. So she picked him out of the photos? Yes, she did. Okay. So count three. What was the corroborating evidence? And was there any identification of the bank robber admitted into evidence? I think there's no count three. I think it's count four, right? It was count four. It is count four. It's January three. We dismissed. You're right. It's count four. The third county conviction. Well, okay, count four. No, there was no identification on that. Okay. How do you know he's the guy who did count four? Well, in all of these situations, there were surveillance pictures which were shown to the jury. And the jury had a chance to look at the pictures and make their own assessment about whether there was a connection between the defendant and the person who perpetrated the robbery. The corroboration elements that the Supreme Court has talked about, you know, went back and forth a little bit about whether you need corroboration that the crime itself was committed or whether you just needed to link the defendant. In this particular case, I think the Court settled on you didn't need necessarily corroboration that the crime was committed, especially when it was this type of crime. Well, we know there was a bank robbery. There's no question about a bank robbery. We don't need corroboration of that. What we need corroboration of is was it him. Was there anything to link him to it? And in this particular case, the jury saw pictures. So what linked them to count four was they saw the pictures of the individual. I'm sorry. They saw the images from the surveillance camera. Yes. And, of course, the defendant, obviously, as he did in all of them, acknowledged them. And then in count five, you had the in-court ID by the teller, and you had a tracking device on that? Well, actually, no, count five was the attempt. Count five was the attempt, right. Oh, count five was the attempt. And we've already talked about that. The next one was count seven, which is the one he actually pled guilty to. Okay. And that was introduced because not only was it similar in everything, but it included the evidence, which was used to help convince the defendant at the time of his confession. Because the confession, the interview, took about two hours. And then he was acquitted on count six. Yes. And that was one where he stood to his guns and said he didn't do it, and the jury accepted that. The pictures were low quality, and he was found not guilty. So they had surveillance pictures. Yes. There were surveillance pictures. Not every bank has good quality surveillance cameras. So I guess the only question I have is the wad of money, is that proof beyond, well, I guess the standard goes the other way now. Could any rational juror convict him based on pictures of money? Well, he did confess to that one. So what we're really looking at, I think, is – The ones with the iPhone photos of the money? Yes. Confessed? No, each one of the counts of conviction, he acknowledged that that was me. So we're looking for corroboration. So some corroboration. And it doesn't have to be much. I couldn't make out the picture. I wish the government would print these things on an inkjet printer so that we could actually look at them and see what it shows. I once had a case where the government actually used a bad Xerox to deceive the panel. And they've been wary of them for the decades since. And in matter of a fact, this particular case was the first one tried in the new courthouse that we have down there that used electronics. And there was some awkwardness at the beginning because, as the court acknowledged, there were gremlins at play. And the videos wouldn't play. But we can get a decent inkjet printer for $50 and get an iPhone picture printed out in 8.5 by 11 and it goes in the record. I don't understand why we didn't see it. We do have decent quality color copies. The ones that were submitted, I think defense counsel included them in her excerpt, were the black and white of those. But I will tell the court that the picture – I always wonder if I'm being fooled when I see a picture that is obviously much worse than could be shown to me. Hopefully not in this case, Your Honor. We have not attempted to do that at all. But the ones, the digital versions were much better. And I toyed with the idea of somehow presenting you with digital images. But honestly, I couldn't figure out how to do it. You don't? No, I figured in this environment how I could present that. Bring in a laptop or something like that. Because the jury saw them just on a screen. Yes, they saw them on multiple monitors. You can make reprints and submit them in the excerpts. That's all that Judge Kleinblatt is saying. I'll keep that in mind. My light is flashing here. Did the court want to hear about the sentencing? Oh, I wanted to hear about one more thing. Sure. On that substantial step stuff, is there some authority clearly in point on what I had imagined was obvious, but apparently it isn't, that once you've taken a substantial step, changing your mind doesn't vitiate the attempt? No, but the case law would seem to suggest that if you've taken that substantial step. That's what I'm asking. Is there a case that involved somebody who had the intent, took a substantial step, changed his mind, and the appellate decision said he either did or he did not have sufficient evidence for an attempt? I don't know of any case specifically like that. My thought is that if he did that and it was an independent decision that was not influenced by outside factors in this case. I thought the word was interrupted in the case. Interrupted. Influenced. Well, interrupted is the correct term. But in this particular case, there was clear interruption. He was physically contacted. And your evidence of culpable intent in this case is all circumstantial based on what he was wearing, saying he wanted his withdrawal. I want to make a withdrawal. That's our primary evidence. That's what I say to the teller. I say, I'd like $500. And she says, and your account number, sir? And I give it to her, and she gives me $500. I just demand $500. You have an account number. That's the only difference I can see. That's sort of a critical difference, I think. I don't know. Was that it? Was there more? Well, there's a sentencing issue. I don't know if. No, no. Was there more evidence of culpable intent? No. No, the outfit and his physical activity. And moving towards the teller station. Was there any evidence that he wore different clothes on a daily basis? We only know what he was wearing when he was committing the robberies, Your Honor. And it was very similar. All the descriptions were very comparable. Okay. Well, thank you. You're over your time. Let's thank you for your questions. Okay. You can have a minute to move back. Your Honor, so I'll just hit a couple of points. I think it's important to note that the descriptions of the robbers, what they were wearing, was pretty generic. And it actually differed from event to event. The robber was wearing dark clothes. But one day it's a leather jacket. Another day it's a trench coat. One day it's a winter cap. Another day it's a baseball cap. He was wearing dark glasses. So he didn't have a robbery uniform? He did not have a robbery uniform. And then the government essentially tried to argue M.O. in this case, you know, that, you know, presented a demand note. Well, their own agent said the demand notes are very common. And so there was nothing that was of, there wasn't an M.O. This was not an M.O. case. So I think that that's important to note. Also, I would note that, again, the identifications, with the exception of Angela Bruno saying it was Akeel Daniels, and then the teller who was actually robbed in that bank saying it was not Akeel Daniels, I think that's important to note. So I don't think that the IDs were nearly as strong as Mr. Lasseter is trying to argue. And, again, I do think that a Sim Daniels who committed his bank robberies, armed, brandished, ordered people to the ground, ended up with a lower sentence than his brother Akeel. And I do think that that — Why is there not enough corroboration that he got caught red-handed on one, the last one? Corroboration of? Of the other ones. You don't need much to corroborate. No. He confessed to everything. He corroborated on one thing. Why doesn't that cover the whole thing? Because I think he had a reason to confess, which he actually told the agent during the interview that he said, I am not going to tell on somebody else. Sure, he didn't want to snitch out his brother. Of course. That could mean false confessions all the way through. Right. But we're not talking here about sufficient evidence in the air. We're talking about evidence merely sufficient to corroborate a confession. And I'm wondering whether the fact that this guy is actually a bank robber, it's not a totally made-up confession to get his brother out of trouble. Why that isn't enough? I think that the corroboration has to be corroboration on each event. It can't simply be the corroboration on the event that he was arrested after. Is there authority for that? Not that I was able to find, Your Honor. With that, thank you very much. Okay. Thank you, counsel. United States v. Daniels is submitted, and the session of the court is adjourned for today.
judges: Kennelly, Kleinfeld, Wardlaw